**Chester G. HAWLEY, Plaintiff–Appellant,**

v.

**DRESSER INDUSTRIES, INC.; George A. Korb, Defendants–Appellees.**

No. 91–3468.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 12, 1991.

Decided March 10, 1992.

Rehearing Denied May 20, 1992.

Jack R. Alton, Patrick H. Boggs, Lane, Alton & Horst, Columbus, Ohio, Mark O'Neill (argued and briefed), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for plaintiff-appellant.

Nancy C. Lee (argued and briefed), John W. Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, for defendants-appellees.

Before KENNEDY and JONES, Circuit Judges, and CONTIE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Plaintiff Chester G. Hawley appeals the order of the District Court granting a judgment n.o.v. in favor of defendants Dresser Industries ("Dresser") and George A. Korb in this age discrimination case. For the following reasons, we REVERSE the District Court's order of judgment n.o.v., AFFIRM its alternative order awarding a new trial, AFFIRM the District Court's order granting offsets from the damage award for increased pension benefits, and REMAND to the District Court for a new trial.

## I.

Plaintiff joined the Jeffrey Manufacturing Company in 1946 as an engineer. In 1972, he became vice president of the parent company, Jeffrey Galion Manufacturing Company. In 1974, Dresser acquired Jeffrey Galion. Plaintiff became president of the Galion Division of Dresser's Construction Equipment Group ("CEG") on May 1, 1976, and in 1977 he was promoted to president of the CEG itself.

In 1981, Korb became the vice president of Dresser to whom plaintiff would report. Three months later, Korb demoted plaintiff to vice president of planning for the CEG with no reduction in pay. Plaintiff was replaced as president by James Hilton. This demotion is unrelated to the present age discrimination claim.

Dresser suffered severe economic difficulties in 1983. As a cost-cutting measure, Dresser's president opted to restructure the organization and remove a level of management. Under Dresser's system prior to 1983, operating management at the divisions reported to the senior management at headquarters through an intermediate level of management called a Group. In 1983, Dresser dismantled eight of its twelve Groups, including the CEG. Six of eight planning officers of these Groups, including plaintiff, were terminated. In the two Groups under Korb's control, twelve top executive positions were eliminated. Of these twelve executives, eleven were found new positions within Dresser after the reorganization. Plaintiff, age 62, was the only one of the executives to be terminated. There were, however, a large number of other persons in other positions who were also terminated.

Plaintiff was a member of the Jeffrey Pension Plan. Because of plaintiff's early termination, Dresser agreed to transfer him to the Galion Pension Plan. This transfer to the Galion plan increased plaintiff's pension by $170,159. Dresser was not obligated to make this transfer. By the terms of the Galion plan, plaintiff was not eligible to participate in the Galion plan because he had not worked at a Galion division as of April 30, 1976. On that date, the Galion and Jeffrey plans were frozen and all employees were transferred to a Dresser pension plan.

At trial, the jury found that Dresser and Korb willfully terminated plaintiff in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. On the issue of damages, the jury found that Dresser and Korb were not entitled to an offset of $170,159, which was attributable to the enhanced pension benefits plaintiff received. The District Court ruled as a matter of law that any award would be offset by $46,451, representing increased pension benefits plaintiff received because of an early retirement subsidy and defrayal of his pension benefits until age 65 instead of taking benefits at age 62 when he was discharged. The court entered a judgment for plaintiff in the amount of $384,116, plus interest. This amount included compensatory damages of $192,058 and liquidated damages in the same amount.

Dresser and Korb moved for judgment n.o.v. or in the alternative, a new trial. On October 31, 1990, the District Court ruled that there was insufficient evidence to support the finding that plaintiff's termination was willful. The court vacated the judgment of liquidated damages and held that if its judgment was reversed on appeal, the defendants would receive a new trial.

On April 25, 1991, the District Court held that there was insufficient evidence to support the finding that plaintiff's termination

violated the ADEA. The court also overturned the jury finding that the defendants were not entitled to the $170,159 offset. The court held that if its judgment were reversed on appeal, the defendants would receive a new trial on these issues as well.

Plaintiff raises three issues on appeal: the District Court erred in granting the judgment n.o.v. on the ADEA claim and in holding that there was insufficient evidence to sustain the jury finding that Dresser and Korb willfully violated the ADEA; the District Court erred in reducing the damage award by $170,159; and the District Court erred in reducing the damage award by $46,451.

## II.

Judgment notwithstanding the verdict raises the issue of whether there was a question of fact for the jury to decide. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Judgment n.o.v. should be granted only if reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Toth v. Yoder Co.,* 749 F.2d 1190, 1194 (6th Cir.1984). In determining whether the evidence is insufficient as a matter of law to support a judgment, a court must view the evidence in the light most favorable to the party against whom the motion for j.n.o.v. is made. *Id.* The court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 154–55 (6th Cir.1988). This Court is bound by the same standard of review. *Id.*

■ A plaintiff who brings an action under the ADEA must prove that age was a determining factor in the employer's decision that was adverse to him. *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229–30 (6th Cir.1990). Where, as here, there is a reduction in force, a plaintiff must either show that age was a factor in eliminating his position, or, where some employees are shifted to other positions, that he was qualified for another position, he was not given a new position, and that

the decision not to place him in a new position was motivated by plaintiff's age. We agree with the District Court that the reduction in force caused the elimination of plaintiff's job and that there was no evidence that age was a factor in the restructuring of the company.

■ If plaintiff is to prevail, it must be on the basis that age was a factor in failing to place plaintiff in another position. The evidence showed that plaintiff was a productive employee and that he had many years of experience in engineering, planning and administration. Plaintiff offered testimony that Mr. Pflaumer, a planner in another Group, was given another planning position after the time that plaintiff was discharged. Plaintiff also offered testimony that John Mitchell, one of plaintiff's assistants in planning for the CEG, was given another job after the reorganization.

Plaintiff also offered testimony from which the jury could have inferred that the defendants considered plaintiff's age in the decision to fire him. James Hilton, who was Hawley's boss, testified that, based on a conversation he had with plaintiff, he thought that plaintiff was so close to retirement that he would not mind being terminated. Korb testified at one point that Hilton was involved in the decision to terminate plaintiff. The jury could have concluded that the defendants were influenced by Hilton's belief concerning plaintiff's willingness to be terminated, a belief which itself was based in part on age.

Defendants offered legitimate non-discriminatory reasons for terminating plaintiff's employment. Defendants argue that the decision to terminate Hawley's employment without finding him another position was based solely on the economic difficulties Dresser was experiencing. The evidence showed that Dresser experienced an operating loss of $81 million in 1983. Witnesses testified that after planning positions were eliminated, planning would be the responsibility of the top executive of each division and therefore new planning positions were not created. As stated above, there was no evidence that the elimi-

nation of plaintiff's position had anything to do with age. Defendants argue that other executives similarly situated as planners were assigned other jobs because they had special skills in law, accounting, industrial relations and personnel relations, and that plaintiff was not qualified for such other positions.

Once defendants offered legitimate non-discriminatory reasons for eliminating plaintiff's employment and for not reassigning him to another position, the burden shifted to plaintiff to prove by a preponderance of the evidence that those reasons were a pretext for age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). We believe that plaintiff presented a question of fact for the jury to decide. The jury could have found defendants' explanation pretextual. We agree with the District Court that as to the eleven other executives who were found other positions, defendants established non-discriminatory reasons as to why they were placed in other positions and plaintiff was not. However, the jury could have found that had reducing costs been the sole objective, one and possibly two other younger employees who were reassigned would have been terminated and plaintiff assigned to the positions to which they were transferred. Plaintiff points to two planners who were not terminated but reassigned to other planning positions, Mitchell and Pflaumer. Mitchell, plaintiff's subordinate, was given a different planning position. Mitchell was younger than plaintiff. Pflaumer was also transferred to another planning position. We are unable to find Pflaumer's age in the record, but the parties' final jury arguments treated him as a younger employee. Viewing plaintiff's thirty-seven years of employment with the organization in several positions, the fact that other positions were found for Mitchell and Pflaumer, and Hilton's belief that plaintiff was ready to retire, the jury could have inferred that plaintiff's termination, which resulted when no other position was found for him, was not based on his lack of skills but on the fact that he was close to retirement age. We hold that judgment

n.o.v. on plaintiff's ADEA claim was inappropriate because there was sufficient evidence from which the jury could have inferred that plaintiff's age was a factor considered by the defendants in discharging him.

A willful violation of the ADEA occurs only when age is the predominant factor in an employer's decision. *Schrand*, 851 F.2d at 158. The jury was given a proper instruction on what was required to find a willful violation of the ADEA. We believe the above evidence provides a sufficient basis from which the jury could have concluded that plaintiff's age was the predominant factor in the decision to terminate him. Therefore, it was inappropriate for the District Court to grant judgment n.o.v. on whether the defendants willfully violated the ADEA.

### III.

■ The District Court held that, if its judgment n.o.v. was reversed on appeal, defendants would be entitled to a new trial on the issues of whether defendants violated the ADEA and whether any such violation was willful. This Court applies an abuse of discretion standard in reviewing a conditional grant of a new trial. *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1523 (6th Cir.1990). A district court must weigh the evidence, but should not set aside a jury verdict merely because the jury could have drawn different conclusions. *Id.*

In granting the motion for judgment n.o.v., the court reviewed all of the evidence. Although we disagree with its conclusion that there was no evidence to be submitted to the jury, we agree that evidence of the failure to find another position for plaintiff because of his age is very slight and solely circumstantial, while the evidence that the positions to which other executives were transferred were openings which plaintiff could not fill was very strong. As plaintiff conceded at oral argument, the only direct evidence of age discrimination was Hilton's misinterpretation of something plaintiff had said to mean that plaintiff would not object to retiring

and that Hilton's opinion was at some time conveyed to Korb. Hilton testified that he told Korb after plaintiff was advised of his termination; Korb did not remember this conversation. The evidence showed that many persons younger than plaintiff were also terminated during the reorganization and retrenchment. Although there was testimony that Mitchell and Pflaumer were planners, the references to them were merely in passing since they did not hold positions at the level of plaintiff. Mitchell was not even mentioned in the arguments to the jury. Defendants established that all executives at the same level as plaintiff who were reassigned had skills or experience that plaintiff did not have. Indeed, plaintiff in his own testimony conceded this for most if not all of them. The Supreme Court has acknowledged that a district judge has the discretion to grant a new trial if the verdict appears to be against the weight of the evidence. *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958). *See also General American Life Ins. Co. v. Central Nat'l Bank*, 136 F.2d 821, 823 (6th Cir.1943). It is clear that the District Court was convinced that a mistake had been committed.

We do not believe that the District Court abused its discretion in granting defendants a new trial. The evidence is especially weak that age was a "significant" factor. The overwhelming weight of the evidence was that age played no part in the failure to place plaintiff in another position.

## IV.

■ Plaintiff argues that the District Court erred in ordering a judgment n.o.v. on the issue of whether plaintiff was eligible for the Galion Pension Plan. Plaintiff testified at trial that he was eligible to participate in the Galion plan because other members of the CEG were covered by the Galion plan. Prior to working on the CEG, plaintiff had worked in a division covered by the Jeffrey plan. He became president of Galion on May 1, 1976. Bettylu Perkins, Dresser's Manager of Pension Administration, testified that as a member of the CEG, plaintiff remained in the pension plan in which he had participated, the Jeffrey plan, and was not entitled to move to another plan. The Jeffrey and Galion plans were frozen as of April 30, 1976, and all employees participated in the Dresser plan as of May 1, 1976. Perkins testified that because plaintiff did not work for Galion until May 1, 1976, he was not eligible to participate in the Galion plan.

The jury found that if plaintiff had not been terminated and had continued to work at Dresser, that Dresser would have transferred him to the Galion plan. Plaintiff had been seeking to switch to that plan for seven years prior to his termination. The District Court granted a judgment n.o.v. on this issue, concluding as a matter of law that under the terms and conditions of the Galion and Jeffrey plans, plaintiff was not eligible to participate in the Galion plan. The court held that the only evidence before the court was that Dresser made the decision to transfer plaintiff to the Galion plan so that he would receive the benefit of $170,159 as increased severance pay. The court thus concluded that the defendants were entitled to a $170,159 offset from the back pay award.

The purpose of an ADEA back pay award is "to restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place." *McMahon v. Libbey–Owens–Ford Co.*, 870 F.2d 1073, 1079 (6th Cir.1989). Back pay is limited to actual damages. Therefore, an ADEA plaintiff is not entitled to a back pay award which includes a pension benefit that he would not have received had he remained employed. *Id.* See *Linn v. Andover Newton Theological School*, 874 F.2d 1, 9 (1st Cir.1989); *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir.1986).

We hold that the District Court properly granted judgment n.o.v. on this issue. Whether plaintiff was entitled to participate in the Galion plan should have been determined by the court as a matter of law and should not have been submitted to the jury. The testimony of the pension administrator made it overwhelmingly clear that

plaintiff was not entitled to enrollment in the Galion plan. The jury's finding otherwise is not supported by the evidence. The only conclusion to be drawn from the evidence is that Dresser switched plaintiff to the Galion plan so that he would receive additional pension benefits as a form of severance pay. We agree with the District Court that the $170,159 received by plaintiff as increased pension benefits should be offset from any back pay award.

## V.

■ The District Court granted a directed verdict that defendants were entitled to an offset of $46,451, representing an increase in the value of plaintiff's pension because of an early retirement subsidy and a deferred payment subsidy. Perkins testified that had plaintiff retired at age 65, he would have received less pension benefits than he was entitled to receive at age 62 after his termination. This offset directed by the District Court was proper so that plaintiff would not receive an award that was greater than his actual damages. We hold that the District Court did not err in granting defendants this offset.

## VI.

Accordingly, we reinstate the jury's verdict that defendants willfully violated the ADEA in discharging plaintiff and we AFFIRM the District Court's order granting defendants a new trial. We AFFIRM the District Court's orders granting defendants' offsets of $170,159 and $46,451 from any back pay award, and REMAND the action to the District Court for a new trial on the remaining issues.

CONTIE, Senior Circuit Judge, dissenting.

For the following reasons, I respectfully dissent. The Age Discrimination in Employment Act makes unlawful the discharge of an employee because of his age. 29 U.S.C. § 623(a)(1). Appellant argues that he successfully carried his ultimate burden of proving that the employer's proferred reason for his termination was a pretext for age discrimination and that the

district court erred in granting appellee's motion for judgment n.o.v.

A judgment notwithstanding the verdict is a question of law that is freely reviewable on appeal. The issue raised by a judgment n.o.v. is whether there was sufficient evidence to raise a question of fact for the jury. *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975). A judgment n.o.v. may be granted only if, upon viewing the totality of the admissible evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion. *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983) (cited in *Ridenour v. Lawson Co.,* 791 F.2d 52, 55 (6th Cir.1986)). Thus, a judgment n.o.v. can only be reversed if, after viewing all of the evidence and drawing all reasonable inferences in favor of the plaintiff, this court concludes that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion." *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

In *Blackwell v. Sun Electric Co.,* 696 F.2d 1176 (6th Cir.1983), this court noted that the burden of proof in an ADEA case should be allocated in accordance with the Supreme Court's decision in *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, in the present case, the district court elected not to decide whether or not appellant made out a prima facie case, instead deciding only that the appellant did not establish by a preponderance of the evidence that he was discharged because of age. Joint Appendix at 66. Therefore, in the present posture, we need only review the district court's decision that appellant failed to carry his ultimate burden, and not each of the elements articulated in *Burdine.*

## I.

In order to successfully carry the ultimate burden in an age discrimination case, the plaintiff must prove, by a preponder-

ance of the evidence, that the employer's articulated reasons for the discharge were a pretext for intentional age discrimination. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). There are three ways in which a plaintiff can establish that a defendant's reasons for the job termination were pretextual: (1) by showing that the reasons had no basis in fact; (2) if they have a basis in fact, by showing that they were not the actual factors motivating the discharge; or (3) if they were factors, by showing that they were jointly insufficient to motivate the discharge. *Id.; LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414–15 (7th Cir.1984).

As this circuit recognized in *Chappell*, plaintiffs often find it difficult to meet their ultimate burden of persuasion in age discrimination cases, even "though they have only to show that age was 'a' and not 'the' determining factor in the employer's personnel decision." *Chappell*, 803 F.2d at 266, *citing Cuddy v. Carmen*, 694 F.2d 853, 859 (D.C.Cir.1982). Moreover, an ADEA plaintiff who has been terminated pursuant to a corporate reorganization or work force reduction has a more demanding burden of supporting charges of discrimination than does an employee who was terminated for other reasons. *Ridenour*, 791 F.2d at 57.[1] Indeed, in these cases, an employee must rely on additional statistical evidence, or evidence that the "employer made statements indicative of a discriminatory motive," *Barnes v. Gen-Corp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990), as circumstantial evidence that age was a determining factor. *See also Ridenour*, 791 F.2d at 57; *LaGrant v. Gulf & Western Manf. Co.*, 748 F.2d 1087 (6th Cir.1984). In the case at bar, appellant relies on two types of evidence in an effort to demonstrate that his termination was pretextual: (1) evidence that he was the only, and the oldest, "direct report" executive level employee terminated; and (2) evi-

dence of discriminatory statements made by Hilton which supposedly influenced the termination decision. There is little merit in either of appellant's contentions.

### A.

Appellant first argues that he was the only "direct report" executive whose job was discontinued. Appellant contends that the fact that he was the oldest "direct report," at age 62, is evidence that the appellee's work force reduction was a pretext for age discrimination. Appellant argues that the other eleven executives contained in this group were all retained by appellee, who managed to find other positions for them. However, this is not an accurate characterization of what occurred within this group of executives. In fact, Sam Lewis, appellant's counterpart at the ME & FG group, also lost his job six months later after he completed working on a specific project. Lewis was 47 years old, and like appellant, the appellee could find no other position for him. Joint Appendix at 611–12. Moreover, one member of this group of "direct reports," J.M. Wurstra, was reassigned to a position as general counsel for another division. Appellant, who lacked legal training, could not have been reassigned to this position. Of the other "direct reports" who were reassigned, appellant has not met his burden of proving that he was qualified to fill any of those reassigned positions. Therefore it cannot be inferred that age was a determinative factor in appellee's management restructuring. Instead, this evidence can only demonstrate that the appellee treated similarly situated persons in an equal manner.

However, our inquiry should not be limited to the twelve "direct reports," as appellant suggests. Rather, we must focus on all the executive level employees within the CEG, whether or not they were "direct reports" and also on all the planning posi-

---

1. A "work force reduction" was described by this circuit as a situation that "occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes*, 896 F.2d at 1465.

tions which existed within all of the eight groups which appellee liquidated.

First, in the CEG there were nine executive level personnel before the reorganization occurred. Five of these executives were reassigned to other positions within Dresser. Four of these executives were terminated, including appellant at age 62. However, the three other executives who lost their jobs, and their ages, are as follows: P.T. Cleary, 50; L.J. Landis, 41; and E.L. Herbert, 33. Joint Appendix at 431. These three executives were younger than three of the five executives who were repositioned. Thus, there is no numerical evidence which suggests that the decision to liquidate was motivated by age. Instead, it appears that the restructuring was made independent of any age-related factors.

Secondly, the district court held "[p]erhaps the most telling evidence introduced in this case demonstrating the utter lack of even a scintilla of evidence of discrimination is the fact that six of the eight executives holding group planning positions were terminated." Joint Appendix at 74, 434. The age group of the six planners who were terminated ranged from 61 to 45, while the ages of those planners who were reassigned were 55 and 48. Moreover, the two planners who were permanently reassigned possessed specialized skills which appellant lacked. Appellant failed to demonstrate that he was qualified for any of these positions, yet was denied reassignment.[2] Thus, specialized skills, and not age appears to be the factor which determined the fates of the planners. Without more, appellant's attempt to meet his burden of proof by relying on numerical comparisons falls short, as a jury could not infer from this evidence that appellant was discriminated against because of his age.

Appellant nevertheless argues that he should have been offered one of these new positions, as he was a productive and hardworking employee with many years of service to the company, and that the appellee's failure to reassign him was sufficient to raise an inference of discrimination. However, "[w]here an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company." *Ridenour*, 791 F.2d at 57; *Barnes*, 896 F.2d at 1469. Therefore, appellee's failure to find a new position for the appellant cannot raise an inference of discrimination in this case. However, even if such a duty existed, the evidence clearly demonstrates that appellee implemented the reassignment of employees without regard to age. Indeed, executives who were younger than the appellant, and younger than many executives who were reassigned, also had their positions eliminated. In addition, those planners who were reassigned possessed specialized skills, such as accountancy and marketing experience, which enabled them to perform jobs for which appellant was not qualified. In fact, appellant has completely failed to identify a job which he would have been capable of performing. In the absence of such a showing, a jury could not infer a discriminatory motive from the simple fact that the appellee found new positions for other employees but not the appellant. Although appellant had many years of service with the company, that alone would not entitle him to a position for which he was unqualified, nor would the fact that he was not offered a position that was subsequently given to a less-senior employee raise an inference of discrimination. Thus, based on numerical comparisons with other similarly situated employees, there is no evidence that appellee's work force reduction and subsequent reassignments were a pretext for age discrimination.

### B.

Appellant also relies on evidence that Hilton made a statement to officials at corporate headquarters that appellant "wouldn't mind termination because he was

---

**2.** Appellant contends that one of his subordinates, J.R. Mitchell, was reassigned, and that appellee's failure to offer him this job raises an inference of discrimination. However, appellant never specifies the type of job into which Mitchell was placed, nor does he demonstrate that he was qualified to fill that job. The fact that appellant's subordinate was offered a new position, without more, is not enough to support an inference of discrimination.

so close to retirement age." Appellant's Reply Brief at 6. It is not in dispute that, at some point, appellant made this comment to Hilton. However, there appears to be some uncertainty as to when, and if, Hilton relayed this information to the corporate headquarters before the decision to restructure was made. Appellant argues that the jury could infer from the evidence presented that the statement was made prior to the decision to terminate appellant. Thus, he argues, this statement may have had some bearing on who was eventually terminated. Appellant relies, in part, on the following:

Q. Line 2. The question was put to you: Who made the decision to terminate Chet Hawley. I mean, what persons? Do you recall your answer? Or could you read your answer?

A. [by Korb]: Should I read the answer? "That would have been a Jim Hilton, George Korb, Jack Murphy-type decision."

Joint Appendix at 652–53. Since Hilton had input into the decision to terminate and he had knowledge of appellant's statement about retirement, appellant argues that age likely entered into the decision to terminate him. However, it is clear from the evidence presented at trial that the decision to initiate a work force reduction in response to severe economic losses came from a source much higher up in the chain of organization, and that Hilton, who was merely a group president, did not influence this decision. The record demonstrates that this decision was made by Jack Murphy, Dresser's president, who early in the summer of 1983, decided that the entire group structure would have to be liquidated. Joint Appendix at 626. This is the decision which led to appellant's termination, and it is evident that it was made in response to economic conditions, and irrespective of any age-related characteristics of the individual executives which comprised the group structure. At the time that George Korb specifically decided to eliminate appellant's position, Korb testified that he did not yet have knowledge of Hilton's comment. *Id.* at 623. In addition, Hilton testified, repeatedly, that he "did

not communicate [the comment] to our corporate office until after my discussion with Mr. Hawley about his termination." *Id.* at 584; *see also id.* at 721. Thus, the timing of the comment, relayed to corporate headquarters after the initial decision was made to reorganize the corporation, precludes a jury from relying on it to support an inference of age bias.

Nevertheless, it is likely that Hilton did have some input into implementing this decision to liquidate group level management. His contribution included trying to reassign displaced executives to new positions within the organization. Thus, appellant argues that, in fact, the termination in this case was comprised of two parts. First, the termination was begun by the decision made in corporate headquarters to liquidate various levels of management. However, appellant's termination was not actually complete until Hilton unsuccessfully tried to find a new position for him. It was only once appellant could not be reassigned to a new job that his termination became effective. Therefore, because Hilton knew of appellant's view of retirement, appellant argues that the failure to reassign him—and hence his termination—was driven in part by age considerations. However, for the following reasons, I do not believe that any inference of age discrimination was raised by Hilton's failure to reassign appellant.

First, the characteristics of the executives who were not reassigned cut across all ages—some younger than appellant. Furthermore, those who were reassigned possessed specialized qualifications which appellant lacked. Appellant was unable to point to a single job for which he was qualified to fill. Secondly, the comment regarding retirement, made originally by appellant, is too abstract to alone support a finding of age discrimination. *Chappell,* 803 F.2d at 268, n. 2. It is clear that not every statement or comment regarding a person's age is probative of an intent to discriminate. *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). A single reference

to appellant's retirement, without more, is not sufficiently probative to meet appellant's burden of proof under the ADEA. Finally, this argument carries little weight because an employer is not required to find substitute employment for executives who were displaced because of a work force reduction. *Barnes,* 896 F.2d at 1469–70; *Ridenour,* 791 F.2d at 57; *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980).

Since there was no evidence that appellant's comment to Hilton was relayed to corporate headquarters before the decision to restructure was made, or that this isolated comment could have contributed in any way to the decision to implement a management-wide liquidation, I would hold that the district court's decision to grant judgment n.o.v. was proper because there was no evidence from which a jury could infer that appellee's termination of appellant was motivated by age.

For the above reasons, I would also hold that the district court properly granted a judgment n.o.v. with respect to the issue of willful discrimination.