45 F.3d 430
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Bruce EASTERWOOD, Plaintiff-Appellant,
v.
RACETRAC PETROLEUM, INC., Defendant-Appellee.
 No. 93-6032.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges; and BECKWITH, District Judge*.
 PER CURIAM.
 
 
 1
 This age discrimination in employment action arises out of the discharge of Plaintiff Bruce Easterwood ("Easterwood") by Defendant, Racetrac Petroleum, Inc. ("Racetrac") as part of a reduction in force ("RIF"). Easterwood sought, inter alia, reinstatement and backpay under the federal Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA").[1]
 
 
 2
 The case was set for trial on June 1, 1993. The parties submitted their final witness lists to the court on May 21, 1993. On May 25, 1993 Easterwood filed a supplemental response to Racetrac's previously filed expert witness interrogatories indicating an expansion on the anticipated expert testimony of Dr. Bruce Hutchinson ("Hutchinson").
 
 
 3
 Trial commenced on June 1, 1993 and continued through June 3, 1993, at which time, at the close of all proof, the district court granted Racetrac's motion under Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law from the bench. A written Order to that effect was entered by the clerk, and the action was dismissed on June 10, 1993. Easterwood's timely notice of appeal followed on July 6, 1993.
 
 Facts
 
 4
 Racetrac is a company engaged in the construction, operation, and leasing of gasoline stations in combination with convenience stores. Racetrac operates two divisions: (i) Racetrac Stores owned and operated by Racetrac; and (ii) Raceway Stores owned by Racetrac but leased to third parties ("Dealers") for operation. The relationship between the Dealers and the sale of gasoline by the Dealers are overseen by the Raceway office in Birmingham, Alabama. The Racetrac stores are managed from the Company's corporate headquarters in Atlanta, Georgia. Racetrac and Raceway had separate real estate departments, which operated independently of each other and were responsible for locating, acquiring, and developing store locations. Racetrac and Raceway maintained separate construction departments but shared an engineering and design department located in Atlanta.
 
 
 5
 The Racetrac Real Estate Department was supervised by Juanita Motley ("Motley"), a Vice President of the Company. She was also responsible for approving purchases of real estate and for setting financing and leasing terms. The Raceway Real Estate Department was supervised by Ray Johnson ("Johnson"), also a Vice President of the company.
 
 
 6
 Easterwood was hired by Racetrac in 1985 as a real estate representative in Chattanooga, Tennessee to look for suitable sites for gasoline and convenience stores for Raceway. In September 1989, Easterwood was promoted to Manager of the Raceway Real Estate Department. During his tenure, Easterwood hired and trained other real estate representatives. His immediate supervisor was Johnson.
 
 
 7
 In the Autumn of 1990, the Gulf War in Kuwait began, causing rapid increases in gasoline prices. Since Racetrac purchases its gasoline on the open market, the price increases of four to five cents per gallon every 24 hours after the invasion caused significant losses in cash flow.[2] Carl Bolch, Jr. ("Bolch"), Chief Executive Officer of Racetrac determined to take decisive action to conserve the company's cash resources. Racetrac eliminated the Raceway Real Estate Department in toto, delegating any remaining responsibilities of that department to the Racetrac Real Estate Department, which was supervised by Motley in Atlanta, Georgia. Five employees, over the age of 40 within the Raceway Real Estate Department were terminated, including Easterwood. Two other employees, Terry Conners, age 43 and Dale Robinson, age 28, were transferred to other positions with the company.
 
 
 8
 At the same time, Racetrac reduced the size of its Racetrac Real Estate Department and the Raceway Construction Department, eliminated the Racetrac Construction Department, and terminated ten or eleven engineers in the Engineering and Design Department in Atlanta.
 
 
 9
 Racetrac had no established policy regarding transferring employees who would otherwise be terminated in the event of a RIF, nor did it provide for bumping less senior employees.
 
 Analysis
 
 10
 In reviewing the district court's grant of judgment as a matter of law under Rule 50(a), the circuit court applies a de novo approach, using the same standard as the district court. As with the standard for summary judgment, the standard for judgment as a matter of law requires the court to view the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in that party's favor. Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 106, S.Ct. 1348, 1356 (1986); FDIC v. Aetna Cas. & Sur. Co., 947 F.2d 191, 210 (6th Cir.1991). The district court should not weigh the evidence, evaluate the credibility of the witnesses, nor substitute its judgment for that of the jury. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Id.
 
 
 11
 Reviewing de novo the district court's grant of judgment as a matter of law in favor of Racetrac, this panel concludes that the Rule 50 standards have been met and, therefore, the district court's ruling was correct and must be AFFIRMED.
 
 
 12
 As a general rule, in order for a plaintiff in an age discrimination action to establish a prima facie case, he must show that: (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir.1994); Gagne v. Northwestern National Insurance Co., 881 F.2d 309, 313 (6th Cir.1989); Eglit, Age Discrimination in Employment, Reduction in Force Sec. 17.61 (1992).
 
 
 13
 The district court determined that Easterwood met the first two requirements, but could not meet the third and fourth. The district court found that Easterwood failed to adduce any evidence that he had ever applied for another position with the company after his discharge and, thus, was unable to show that he was qualified for another position with Racetrac. As to the fourth requirement, the district court found that since Easterwood's position was abolished, he was not replaced by a younger employee. It is clear that the district court failed to analyze the case in the appropriate RIF context.
 
 
 14
 The question before the district court and here is whether Easterwood adduced any evidence from which a reasonable trier of fact might find that the RIF was discriminatorily applied to him. Even slight or circumstantial evidence is sufficient to go to the jury. Hawley v. Dresser Industries, Inc., 958 F.2d 720 (6th Cir.1992).
 
 
 15
 In a RIF situation, where jobs are eliminated, the usual standards cannot apply. If a position is eliminated, one's qualifications for the job previously held become the third focus of inquiry. If a position is eliminated, a younger person will not be replacing the plaintiff. Therefore, the third and fourth elements of the Plaintiff's claim must be modified to reflect the RIF situation. The Plaintiff must show that he was qualified for the position that he held and that he was discharged because of age. McDonnell Douglass Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 16
 In order to prove the last requirement, the Plaintiff must adduce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the Plaintiff for discharge for impermissible reasons." Barnes v. Gen Corp., Inc., 896 F.2d 1457, 1465-1466 (6th Cir.), cert. denied, 498 U.S. 878 (1990). See also Phelps v. Yale Security, Inc., 986 F.2d 1020 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993); Ridenour v. Lawson, 791 F.2d 52, 57 (6th Cir.1986). In other words, "the mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case." La Grant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir.1984). In Barnes, the Court concluded that this would be so even if the "plaintiff additionally demonstrated that younger persons were retained in other jobs which the plaintiff was qualified to perform." The Court reasoned that to rule otherwise would establish a prima facie case of age discrimination whenever a member of the protected age group was discharged as part of a work force reduction. Consequently, the plaintiff must adduce some evidence of a nexus between his age and his discharge.
 
 I.
 
 17
 Plaintiff has established that he was a member of the protected class and that he was discharged. Easterwood was 57 years old at the time of his discharge on November 6, 1990. Easterwood had never received any evaluation indicating that his conduct or work were unsatisfactory during his five years with Racetrac. Although Racetrac has argued that Easterwood falsified his employment application and would have been discharged on that ground, it does appear that his work was satisfactory. He was, then, at least arguably qualified for the position that he held. The final element of the Plaintiff's case, the nexus between his discharge and his age is the point at which Plaintiff's case falters.
 
 
 18
 Easterwood concedes that a genuine RIF was effectuated in response to the business economic crisis that resulted from the Gulf War. He argues, however, that since all members of the protected class in the Raceway Real Estate Department were terminated pursuant to the RIF, while two younger employees were retained, he has adduced circumstantial evidence of an impermissible age-discriminatory application of the RIF. Defendant responds that the RIF did not apply solely to the Racetrac and Raceway Real Estate Departments, but also affected the Racetrac and Raceway Construction Departments and the Engineering and Design Department. Therefore, Defendant argues the universe to be examined includes all five of those departments rather than only the two real estate departments mentioned by Easterwood. Defendant continues its analysis by showing, without contradiction, that 29 employees were discharged from the five affected departments in November 1990. Of those employees, 12, or 41.4%, were 40 years of age or older,[3] while 17, or 58.6%, were under the age of 40 years.
 
 
 19
 A subsequent RIF in April 1991 resulted in the termination of individuals 40% of whom were aged 40 years or older. The resulting average age of personnel retained in the affected departments increased from 35 years of age to 38 years of age.
 
 
 20
 Racetrac also points out that the two employees from the Raceway Real Estate Department that Easterwood says were retained were actually transferred. Terry Conners, who was 43 years of age and a part of the protected class, was moved to the Racetrac Real Estate Department to facilitate the sell-off of excess building sites. Dale Robinson was converted to a District Manager in Operations for Raceway in southeastern Tennessee. Additionally, Racetrac points out that Conners and Robinson did not hold jobs comparable to Easterwood's position and that the jobs to which they transferred were not comparable to Easterwood's position. They were real estate representatives working for Easterwood, who was the Real Estate Manager.
 
 
 21
 It is clear that Defendant is correct in positing all five departments as the universe to be examined for evidence of an impermissible age-discriminatory application of the RIF. Since Easterwood's various arguments include that he should have been offered a transfer, he cannot choose to use the real estate departments as the universe for one purpose, but include all five affected departments for other purposes. The district court pointed out in the first instance that the majority of the Raceway Real Estate Department staff belonged to the protected class, so that the elimination of that department, without more, would suggest a statistical basis for an age discrimination claim. To limit the inquiry to the Raceway Real Estate Department would be unjust and too narrow, when the RIF covered four other departments as well. When all five departments are considered, the statistics do not favor Easterwood's claim.
 
 
 22
 The transfers of two younger employees do not support Easterwood's claim. Dale Robinson ("Robinson") was transferred by a different decision-maker from the decision-maker who created and effectuated the RIF. Robinson was hired by Floyd Philpot, Racetrac's General Manager for Contract Operations. The RIF was the creation of Racetrac CEO Bolch and effectuated by Vice President Motley. Philpot's decision was independently made and cannot be imputed to Bolch or Motley for purposes of establishing Easterwood's case. Where different individuals make the decisions to terminate the Plaintiff during a RIF and to rehire or transfer a younger worker, no inference of age discrimination is established. Phelps, supra, at 1025.
 
 
 23
 Terry Conners' situation presents a slightly different set of facts. He was transferred to the Racetrac Real Estate Department as a real estate representative under Motley's aegis. He had worked for the company for a shorter period of time than Easterwood and did not have a proven record. Easterwood, on the other hand, was highly regarded for the work he had done. Nevertheless, in the admitted absence of an established bumping or transfer policy at Racetrac, Easterwood was not entitled to displace subordinate or less senior employees. See generally, Barnes, supra. Racetrac was not obliged to afford him that opportunity, and its failure to do so cannot be construed to establish a prima facie case.
 
 
 24
 As regards Mark Hunter and Larry Anderson, two real estate representatives in the Racetrac Real Estate Department who were under the age of 40 and retained after the RIF, their positions fall within the rules enunciated in Barnes also. Plaintiff is not entitled to bump a subordinate or less senior employee in the absence of an established practice. Furthermore, the jobs of Hunter and Anderson were not comparable to Easterwood's job. They were not trainers or managers, had no hiring responsibilities, and their jobs were in a different department from Easterwood. See Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980).
 
 
 25
 Finally, Easterwood points to the discrepancy between Motley's testimony and that of Johnson, Main, and Bolch regarding Motley's working relationship with Plaintiff. Motley testified that she had no problems with Easterwood, while Johnson and Main both testified that Easterwood had told them that he could not work with Motley. Bolch testified that he had heard through both Motley and Johnson that Easterwood and Motley could not work together. There are several reasons that this is not probative of age discrimination.
 
 
 26
 Initially, the Court notes that Motley did not make the decision to terminate Easterwood. Bolch created the RIF plan, which included the elimination of the Raceway Real Estate Department and Easterwood's job. Motley made the decision to transfer Conners to the Racetrac Real Estate Department, but that was separate from the decision to terminate Easterwood. She also made the decisions to retain Hunter and Anderson in the Racetrac Real Estate Department. Again, these decisions were separate from and independent of Bolch's decision to terminate Easterwood and the others in the implementation of the RIF. Phelps, supra. Moreover, these jobs were not comparable to Easterwood's job. For Easterwood to have been offered any of these jobs would have required either a bumping or transfer policy at Racetrac at the time of the RIF, a situation that did not obtain there. Barnes, supra.
 
 
 27
 Easterwood cites Hawley in support of his contention that Racetrac's decision not to employ him as a real estate representative while retaining younger employees in that position is evidence of age discrimination. Hawley can be distinguished on factual grounds. In Hawley, the plaintiff was the only one of twelve similarly situated executives who was not permitted to transfer or bump to a lower level. Here, it is undisputed that Racetrac did not permit anyone to bump to a lower level, and no comparable level position existed into which Easterwood could have transferred laterally.
 
 
 28
 The Court, having carefully reviewed the record in this case, is unable to find even the slight or circumstantial evidence contemplated by Hawley, which would send this case to the jury. The district court must be affirmed despite our different analysis. See Russ' Kwik Car Wash v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985). Plaintiff has failed to make even a prima facie case. The district court's decision is correct, although not for the reasons set forth in its opinion.
 
 II.
 
 29
 Plaintiff also alleges that the district court erred in its assessment of Plaintiff's burden regarding proof of pretext. Although this issue is moot in light of our holding, we will briefly address it. The district court ruled that Plaintiff had failed to rebut Racetrac's proof regarding the legitimate economic business necessity for the RIF, thus failing to rebut Defendant's proffered legitimate business reasons for Plaintiff's termination. In light of our analysis above, the ruling is ultimately correct, but the reasons cited by the district court are erroneous.
 
 
 30
 The question here is not whether the RIF was genuinely triggered by economic business reasons, but whether, having conceded this point, Plaintiff can show that the RIF was discriminatorily applied to him. For the reasons set forth in the previous section, we cannot say the Plaintiff has been able to establish a scintilla of proof, even circumstantial proof, that age was a determining factor in his termination or that the RIF was a pretext for an age-discriminatory discharge. The district court's ruling, although erroneously reached, was ultimately correct on this issue and must be AFFIRMED.
 
 III.
 
 31
 Finally, Plaintiff alleges that the district court abused its discretion by refusing to permit the introduction of Dr. Hutchinson's statistical analysis of the probability of six employees over 40 years of age being terminated in a RIF while three employees under 40 years of age were retained. The district court is vested with broad discretion to manage the trial and the pretrial discovery process. Trial by ambush has been replaced by an orderly discovery process in which the opposing sides reveal their experts and their anticipated opinions well in advance of trial, so that the trial can proceed in an efficient manner. Where, as here, one side suddenly divulges that a previously revealed expert will testify on a wholly different point from that previously revealed, the orderly litigation process is disrupted.
 
 
 32
 Dr. Hutchinson had been timely disclosed as Plaintiff's expert economist witness. Thereafter, Plaintiff notified Defendant that Dr. Hutchinson would testify also about the statistical probability of the termination of Easterwood and others of the protected class in the two real estate departments vis-a-vis the younger employees. Plaintiff's revelation was made approximately thirty days after the responses to Defendant's expert witness interrogatories were due, three weeks after the close of discovery and seven days prior to trial. Racetrac says that Plaintiff's belated supplemental answer to its expert witness interrogatory was too vague to allow Defendant to evaluate the scope and content of Hutchinson's new testimony and too late to permit Defendant to take his deposition and secure its own expert evaluation of the new material. For these reasons alone, the district court was justified in denying Plaintiff the opportunity to present Hutchinson's additional testimony. Further, the district court opined that the universe that Hutchinson had used (the two real estate departments) was inadequate as compared to the scope of the RIF and, therefore, not likely to be helpful to the jury. Still further, the district court pointed out that the numbers involved in this matter were not so complex that a jury would have need of expert testimony in order to determine their meaning and effect. Rule 702 of the Federal Rules of Evidence permits expert testimony only when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Neither of the rule's prerequisites obtains here. The district court did not abuse its discretion in refusing to allow this evidence.
 
 Conclusion
 
 33
 For the foregoing reasons, the district court's grant of judgment as a matter of law in favor of Defendant is AFFIRMED.[4]
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The ADEA provides that it shall be unlawful for an employer:
 To fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.
 29 U.S.C. Sec. 623(a).
 The THRA's prohibition against age discrimination substantially mirrors that of the ADEA, and Tennessee courts apply the same standards in cases brought pursuant to the THRA as those applied by the federal courts in cases brought pursuant to the ADEA. See Bruce v. Western Auto Supply Co., 669 S.W.2d 95, 97 (Tenn.Ct.App.1984); Tenn.Code Ann. Sec. 4-21-401(a)(1).
 
 
 [2]
 A $2 million loss was suffered in September 1990, for example
 
 
 [3]
 One of these employees was James D. Main, who was subsequently rehired by Racetrac in another position
 
 
 [4]
 Both parties briefed issues surrounding Defendant's claim that Plaintiff had falsified his employment application and could have been terminated for that reason. In light of this Court's ruling regarding Plaintiff's prima facie case, the matter is MOOT