June A. **KREUZER**, Plaintiff–Appellant,

v.

Virgil E. **BROWN**, Defendant–Appellee.

No. 96–3107.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1997.

Decided Oct. 20, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 22, 1997.*

---

* Judge Moore would grant rehearing for the reasons stated in her dissent.

D. Lewis Clark, Squire, Sanders & Dempsey, Kevin L. Shoemaker (argued and briefed), Berry & Shoemaker, Columbus, OH, for Plaintiff–Appellant.

John W. Zeigler (briefed), Marion H. Little, Jr. (argued and briefed), Stuart G. Parsell (briefed), Zeiger & Carpenter, Columbus, OH, for Defendant–Appellee.

Before: NORRIS and MOORE, Circuit Judges; RUSSELL, District Judge.**

NORRIS, J., delivered the opinion of the court, in which RUSSELL, D.J., joined. MOORE, J. (pp. 365–371), delivered a separate dissenting opinion.

ALAN E. NORRIS, Circuit Judge.

Plaintiff, June A. Kreuzer, appeals from the district court's order granting summary judgment in favor of defendant, Virgil Brown, on her claim under 42 U.S.C. § 1983 that she was discharged from her position at the Ohio Lottery Commission because of her political affiliation and in violation of her rights under the First and Fourteenth Amendments. For the reasons set forth below, we affirm.

## I.

Plaintiff was employed by the Ohio Lottery Commission ("Commission") as a Lottery Executive Account Representative ("LEAR") from February 1987 to June 1991, when she was terminated. During that time, LEARs were divided into two groups: "Partners–in–Prosperity" ("PIPs"), who worked with individual retail outlets, and Chain Account Representatives, who serviced chain stores. Plaintiff was a PIP for the entire time she worked at the Commission. Prior to her employment with the Commission, she served as a Democratic state representative in the Ohio General Assembly, until she was defeated in the Democratic primary of 1986.

In January 1991, newly elected Republican Governor George Voinovich appointed defendant Brown as the executive director of the Commission. Shortly after his appointment, Brown determined that the Commission needed to reorganize in order to increase its efficiency, and that it needed to place greater emphasis upon working with larger chain stores rather than with individual retail outlets. To this end, Brown eliminated the PIP program, added three new Chain Account Representative positions, and shifted the focus of all Chain Account Representatives to acquiring new business and overseeing problems with large business accounts. In addition, Brown created a new position, Regional Coordinator, to service all accounts, large and small, in pre-established regions.

In June 1991, Brown discharged plaintiff as part of the reorganization.[1] Brown also incorporated all LEARs into the Commission's sales division. To fill newly available

---

** The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Plaintiff asserts that all of the discharged employees were Democrats. This fact is, however, of little relevancy since all LEARs were Democrats prior to the reorganization.

positions, Brown transferred four employees from other positions at the Commission, and hired seven new employees. After the reorganization, the Sales Division was composed of five Chain Account Representatives, of whom three were Democrats and two were Republicans; five Regional Coordinators, only one of whom was a confirmed Republican; and two "other" employees, both of whom were Democrats.

After her termination, plaintiff brought an administrative challenge to her dismissal before the Ohio State Personnel Board of Review. The Board dismissed her appeal, holding that LEAR positions at the Commission are "unclassified" for civil service purposes, and that plaintiff was therefore terminable at will.

On August 26, 1992, plaintiff filed this action against Brown in the district court, claiming that her First and Fourteenth Amendment rights were violated, and that she was entitled to recovery under 42 U.S.C. § 1983. Plaintiff claimed she was discharged from her position because of her longstanding affiliation with the Democratic Party. Brown responded by filing a motion for summary judgment based upon the merits of plaintiff's claim and upon qualified immunity. With respect to the merits of plaintiff's claim, Brown contended that plaintiff was terminated because the PIP positions were eliminated in the reorganization, and that she was not hired for one of the other positions because he believed others were better qualified for those positions.

In opposition to Brown's motion for summary judgment, plaintiff argued that there was a genuine issue of material fact concerning his motivation in terminating her, and that, while her job was eliminated as part of the reorganization, she was entitled to one of the positions that resulted from the reorganization. At oral argument, however, plaintiff's counsel conceded that plaintiff was not entitled to a Regional Coordinator position, indicating that her only claim is that Brown should have given her a Chain Account Representative position, and that he failed to do so because of her political affiliation.

In support of this claim, plaintiff testified by affidavit that Brown fired her with little explanation, merely telling her, "you know how these things go." In addition, she introduced the affidavits of Jerry Vittardi, a former PIP, and Cynthia Easter, a former Chain Account Representative, as well as affidavits of other former employees of the Commission. Vittardi testified that Brown told him that he did not want to fire him but that "his hands were tied" and that "there are commitments out there." Easter testified that when Brown fired her, he told her that there were no problems with her job performance, but that he "had to make room for other people." Easter further testified that soon after Brown arrived at the Commission, he told an assembly of employees that "some people would lose their jobs through politics."

The district court granted defendant's motion for summary judgment on the merits, and it did not address the issue of qualified immunity. In doing so, it concluded that Brown reorganized the Commission because of legitimate business reasons, and that the reorganization was not a pretext for terminating plaintiff because of her political affiliation. The court also concluded that plaintiff failed to offer any evidence that the newly created positions were a "carbon copy" of plaintiff's PIP position. Plaintiff does not challenge these conclusions on appeal.

## II.

We review the district court's grant of summary judgment de novo. *See, e.g., Brooks v. American Broadcasting Co.,* 999 F.2d 167, 174 (6th Cir.1993). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Our inquiry into a grant of summary judgment is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989) (citation omitted).

In doing so, we must draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). In order to reverse a district court's grant of summary judgment, we must conclude that the evidence presented, if accepted by the jury, is sufficient to permit plaintiff's recovery. *Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir. 1994).

### A.

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the United States Supreme Court held that a governmental unit could not constitutionally terminate a non-policymaking employee solely on the grounds of political affiliation, because such terminations "severely restrict political belief and association." *Id.* at 372, 96 S.Ct. at 2689. However, the Court stated that governments have a vital interest in ensuring that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration," *id.* at 367, 96 S.Ct. at 2687, and that patronage dismissals are therefore permissible in cases involving employees in "policymaking positions," *id.* at 372, 96 S.Ct. at 2689. The Court affirmed this holding in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The *Branti* Court also clarified the scope of permissible patronage, holding that "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295. Finally, in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court reaffirmed the rationale of both *Elrod* and *Branti*, extending their reach beyond patronage dismissals to such other common employment practices as hirings, transfers, promotions, and recalls from layoffs. *Id.* at 79, 110 S.Ct. at 2739–40.

 In order to establish a prima facie case of patronage dismissal in violation of her First Amendment rights, plaintiff must show that the adverse employment action in question was the result of her political affiliation.

*See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). To establish the required causal connection, plaintiff must show that her political affiliation was a "substantial" or "motivating" factor behind the adverse employment action. *Id.* at 287, 97 S.Ct. at 576. This showing may be made by direct or circumstantial evidence. *Conklin v. Lovely*, 834 F.2d 543, 546–547 (6th Cir.1987) (citing *Rosaly v. Ignacio*, 593 F.2d 145, 149 (1st Cir.1979)). If plaintiff meets her burden, the burden then shifts to the defendant to prove that the employment decision would have been the same even without political considerations. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

### B.

Plaintiff argues that the district court erred in granting Brown's motion for summary judgment because she presented evidence which, if accepted by the jury, could support her claim that her dismissal from the Commission violated her First Amendment rights. Specifically, plaintiff argues that the evidence shows that, because she is a Democrat, Brown refused to give her one of the Chain Account Representative positions which were added after the reorganization.

 Before plaintiff can establish a First Amendment violation, she must show that she was subjected to a legally actionable personnel decision. It seems to us that under the circumstances present in this case, where a public employee loses her job because her position is eliminated in a reorganization, there are three scenarios under which the employee could make out a claim of unconstitutional patronage dismissal. First, her dismissal would be actionable if the stated business or policy reasons for the reorganization are a subterfuge for its actual motivation, the desire to eliminate politically unfriendly employees. Under this scenario, evidence that positions which are added or redefined as part of the reorganization are effectively identical to those eliminated would be a strong indication of improper motive. Second, the employee could demonstrate that she was improperly terminated for political

reasons if similarly situated employees who were affiliated with the other political party were shifted to other positions, that she was qualified for one of those positions, and that the decision not to give her one of those positions was politically motivated. Finally, the employee could state a claim if at some point before or during the reorganization she applied for a different position, and she was not considered because of her political affiliation. As the Supreme Court pointed out in *Rutan,* failure to consider an employee for a position because of her political affiliation is equally as actionable as a patronage dismissal. 497 U.S. at 79, 110 S.Ct. at 2739–40.

■ However, none of the scenarios is supported by the facts in the record before us. Beyond merely characterizing the reorganization as a "purported" one, plaintiff does not challenge the district court's conclusion that Brown's decision to reorganize the commission, and thus to eliminate plaintiff's PIP position, was based upon legitimate business or policy reasons. Nor does she challenge the court's conclusion that there is no evidence that any positions to which she lays claim are essentially the same as the eliminated positions. Furthermore, while the record does show that following the reorganization, two former PIPs were given Chain Account Representative positions, and that plaintiff may have been qualified for one of those positions, both of the transferred employees were Democrats. Thus, it is unlikely that plaintiff was not transferred because she is a Democrat. And finally, there is no evidence in the record that plaintiff ever applied for a position at the reorganized Commission before bringing this action.[2]

■ Rather, the essence of plaintiff's argument is that Brown should have considered her automatically for one of the Chain Account Representative positions once her position was eliminated. As pointed out by the Supreme Court, however, "[t]he First

Amendment is not a tenure provision, protecting public employees from actual or constructive discharge." *Rutan,* 497 U.S. at 76, 110 S.Ct. at 2737–38. While the law protects public employees, except in limited circumstances, from losing their employment because of political considerations, the law does not create an entitlement to life-time employment. Accordingly, the First Amendment does not require the government to automatically consider employees whose jobs were eliminated for business reasons for other positions. Thus, under the circumstances of this case, Brown's failure to consider plaintiff for one of the new positions is not an actionable personnel decision.

Accordingly, we conclude that the district court did not err in granting summary judgment in Brown's favor.

### III.

Brown also argues that he is still entitled to summary judgment because, under the Supreme Court's decisions in *Elrod* and *Branti,* political affiliation is an appropriate requirement for the effective performance of a LEAR position. In the alternative, he contends that even if he dismissed plaintiff in violation of her First Amendment rights, he is entitled to qualified immunity because he did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We need not reach these arguments in view of the fact that we affirm the district court's grant of summary judgment in favor of Brown.

### IV.

The judgment of the district court is **affirmed.**

---

2. While courts have excused an employee's failure to apply for a position in other contexts when such a gesture would have been futile, plaintiff does not make this argument here. In any event, in those contexts, we have previously held that in order to overcome the lack of application for a position, a plaintiff must present "overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices," and plaintiff must also show that "any application would have been futile and perhaps foolhardy." *Harless v. Duck,* 619 F.2d 611, 617–18 (6th Cir.1980). The evidence in the record falls considerably short of meeting this kind of elevated standard.

MOORE, Circuit Judge, dissenting.

The freedom to exercise the right of political association has been, and should continue to be, jealously guarded by the judiciary. *See generally Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In the context of public employees, the Supreme Court has recognized that the interest in an effective government and the interest in preserving the rights to free speech and political affiliation of individual public employees at times conflict, and at times the individual's rights must, of necessity, give way. As the Supreme Court cautioned in *Elrod,* 427 U.S. at 372, 96 S.Ct. at 2689, however, terminating a non-policymaking public employee on the grounds of political affiliation "severely restrict[s] political belief and association."

In an effort to protect her right to political association, Plaintiff–Appellant, June Kreuzer, brought this suit against Defendant–Appellee, Virgil Brown, the Director of the Ohio Lottery Commission, alleging that he discharged her because of her political affiliation. This allegation states a claim of deprivation of rights guaranteed by the First and Fourteenth Amendments under the *Elrod–Branti–Rutan* line of Supreme Court cases and is actionable under 42 U.S.C. § 1983. *See Rutan,* 497 U.S. at 79, 110 S.Ct. at 2739–40; *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294; *Elrod,* 427 U.S. at 373, 96 S.Ct. at 2689–90. Because I believe that the majority misapplies the relevant governing standards, I must respectfully dissent.

## I. THE STANDARD

The majority correctly lays out the standard governing claims of discrimination based on political association, but a proper application of this standard in this case compels a denial of summary judgment. "[T]o establish a prima facie case of patronage dismissal in violation of her First Amendment rights, plaintiff must show that the adverse employment action in question was the result of her political affiliation." *Majority op.* at 363; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Conklin v. Lovely,* 834 F.2d 543, 546 (6th Cir.1987). To establish such a case, a "plaintiff must show that her political affiliation was a 'substantial' or 'motivating' factor behind the adverse employment action." *Majority op.* at 363; *see also Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Conklin,* 834 F.2d at 546. "This showing may be made by direct or circumstantial evidence." *Majority op.* at 363; *see also Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 152 (6th Cir.1995) ("[A] party may rely upon both direct and circumstantial proof to oppose a motion for summary judgment in all actions anchored in discrimination, including motions for summary judgment evolving from qualified immunity issues."); *Conklin,* 834 F.2d at 546–47. "If plaintiff meets her burden, the burden then shifts to the defendant to prove that the employment decision would have been the same even without political considerations."[1] *Majority op.* at 363; *see also Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442, 1452 (10th Cir.1997); *LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996); *Shanahan v. City of Chicago,* 82 F.3d 776, 780 (7th Cir.1996). As discussed below, in

---

1. It should be noted that, unlike employment discrimination cases under Title VII, the plaintiff in a First Amendment political discharge case does not retain the burden of proof once he or she has presented sufficient evidence that the protected conduct was a substantial or motivating factor in the adverse employment decision. *See Jirau–Bernal v. Agrait,* 37 F.3d 1, 3–4 (1st Cir.1994) (holding that political discrimination claims are not subject to the Title VII burden-shifting device, and plaintiff's failure to rebut the reorganization defense does not necessarily compel summary judgment for the defendant because the burden is on defendant to proffer evidence

that "compel[s] the finding that political discrimination did not constitute a 'but for' cause for the" dismissal); *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66–67 (1st Cir.1993) (contrasting burden shifting in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981) (Title VII case) *with Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 (political discrimination case)). The public employer has the burden to prove, by a preponderance of the evidence, that the same decision would have been made in the absence of the political conduct. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

Part IV, an employer may also defeat a claim of discrimination based on party affiliation by demonstrating "that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295.

## II. APPLICATION OF THE STANDARD

Applying this standard to the evidence in this case, and drawing all justifiable inferences in favor of the non-moving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), I would reverse the district court's grant of summary judgment. There exists such disagreement as to whether Kreuzer was the subject of an adverse personnel decision in violation of her First and Fourteenth Amendment rights that reasonable minds may differ as to whether Brown terminated Kreuzer due to her political affiliation. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989); *see also Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir.1994) (holding that in order to reverse a district court's grant of summary judgment, court must conclude that evidence presented, if accepted by jury, is sufficient to permit recovery by plaintiff).

At the time of her dismissal, Kreuzer was employed as a Lottery Executive Account Representative ("LEAR") at a public agency, the Ohio Lottery Commission ("the Commission"). Kreuzer had served in the Ohio General Assembly as a Democratic state representative for four years. Joint Appendix (J.A.) at 338–340 (Kreuzer Dep.). Brown, a former Republican County Commissioner from Cuyahoga County, Ohio, and Kreuzer met each other during the time. Kreuzer was serving in the General Assembly, and Brown was aware of Kreuzer's political affiliation.[2] J.A. at 204 (Brown Dep.), 368–372 (Kreuzer Dep.). In June of 1991, Kreuzer was discharged from her position at the Ohio Lottery Commission.[3] The only real question then is whether there exists sufficient evidence, both circumstantial and direct, which if accepted by a jury would indicate that Brown's decision to discharge Kreuzer was motivated by her party affiliation.

### A. *Conklin v. Lovely*

In *Conklin v. Lovely*, 834 F.2d 543 (6th Cir.1987), this court considered a case presenting facts similar to Kreuzer's. Carol Conklin, a county clerk, allegedly had been dismissed because of her active political support for a Democratic candidate for County Prosecuting Attorney who lost to a Republican. At one point Conklin was told by one of her supervisors, "paybacks are hell." *Id.* at 545. As explanation for her firing, Conklin was simply told by both of her supervisors, "I can't tell you, you're just fired." *Id.* There was also testimony that one of the supervisors had stated "that there was nothing he could do about it, as the decision came from a higher authority than him." *Id.* After the district court denied summary judgment on the § 1983 claim, a jury found for Conklin. In affirming the district court's denial of the defendants' motion for summary judgment, this court emphasized: the fact that Conklin had an exemplary employment record; the statement by one of the defendants that "paybacks are hell," and the testimony of a witness which indicated that she, too, was discharged for political activities. *Id.* at 547.

### B. Brown's Dismissal of Kreuzer

In Kreuzer's case, a jury could certainly find her support as compelling as the evidence in *Conklin*. When the evidence is viewed in the light most favorable to Kreuz-

---

**2.** Brown originally denied that he was aware of Kreuzer's political affiliation at the time of her dismissal, *see* Def.'s Answer ¶ 15, though he does not dispute that he knew she was elected to the General Assembly as a Democrat. *See* J.A. at 204 (Brown Dep.).

**3.** Kreuzer was dismissed from her position in June of 1991, but for a variety of reasons due to a

purported reorganization of the Commission staff, her dismissal could also be characterized as a failure to transfer, failure to promote, or a failure to rehire. For the purposes of simplicity, for much of my dissent I will refer to the adverse personnel action as if it constituted a firing only.

er, it appears that although she originally received her job at the Commission through her political connections, she performed the job quite well and received favorable performance evaluations. *See* J.A. at 283 (DeMio Dep.); J.A. at 324–25 (Performance Reviews). When the new administration came into office and Brown took control of the Lottery Commission, he held a general meeting at which he announced that some of the employees who had gotten their jobs through politics would lose them the same way. *See* Supp. J.A. at 26 (Easter Aff.), 29 (Hughes Aff.). As in *Conklin*, at Kreuzer's termination meeting, Brown gave no reason for firing her other than to say "you know how these things go." J.A. at 366 (Kreuzer Dep.). There is also evidence suggesting that Brown specifically wanted Kreuzer out of the office. *See* J.A. at 230–31, 239 (Brown Dep.); 470–71 (Musarro Dep.) (stating that Brown indicated he wanted to "separate" Kreuzer without mentioning reorganization). Indeed, two weeks prior to firing Kreuzer, Brown's office faxed the governor's office a letter from Brown indicating that he wanted to get rid of Kreuzer because he believed her position "requires a high degree of personal loyalty, trust, confidence, reliance, and fidelity, and/or is authorized to act on my behalf." Supp. J.A. at 43 (Landy Aff., Attach.). A reasonable jury could infer from this evidence that Brown was motivated to terminate Kreuzer because of her political affiliation.

### C. The Reorganization & the New Republican Hires

Prior to the alleged reorganization, the Lottery Executive Account Representatives ("LEAR") Division, which handled the sales of lottery tickets, was made up of "Partners in Prosperity" ("PIPs") and "Chain Account Representatives." *See* J.A. at 500–01 (Musarro Dep.). PIPs were primarily responsible for acting as liaisons between the Commission and smaller sales agents. *See* J.A. at 206 (Brown Dep.); J.A. at 359, 406–07 (Kreuzer Dep.); J.A. at 258 (DeMio Dep.). The Chain Account Representatives managed the recruiting, marketing, and sales problems of the large chain and franchise stores. *See* J.A. at 416–19 (Kreuzer Dep.). As a PIP, Kreuzer traveled throughout the State of Ohio visiting the sales agents in order to survey their marketing efforts and offer suggestions for improving marketing to increase lottery ticket sales. *See* J.A. at 354–56 (Kreuzer Dep.). When Brown took over the Commission, he wanted to shift the focus of the LEAR program to the large chain stores. *See* J.A. at 211, 241–44 (Brown Dep.). To do this, Brown fired the existing PIPs or shifted them into the Chain Account Representative positions. *See id.* There was no job abolishment to the extent that all of the LEAR employees that were dismissed were replaced by new LEAR employees at the same state job classification level. *See* J.A. at 215, 222 (Brown Dep.) Some of these new LEARs were put into Chain Account Representative positions and others were hired into a position Brown created under the LEAR Division called Regional Coordinators who were responsible for servicing all agencies within a defined region. *See* J.A. at 80–81 (Musarro Aff.).

As part of the reorganization, LEAR positions that were not filled by transferring existing Commission employees were filled by new employees. *See* J.A. at 222 (Brown Dep.). This is significant to the extent that at one point in his deposition Brown indicated that Kreuzer was removed rather than transferred because "[w]e did not need all the people in that unit." J.A. at 221 (Brown Dep.). Additionally, three new employees hired at or near the time of Kreuzer's firing all had important connections to the Republican party. Nancy Suhadolnik was the wife of a Republican state senator, with recommendations from Robert Hughes, then Chairman of the "Cuyahoga County Republican Organization [sic]," and other prominent Republicans. *See* J.A. at 240 (Brown Dep.); J.A. at 644 (Suhadolnik Dep.). Yvonne Petrigac was a Republican mayor of North Olmsted, Ohio, worked on Governor Voinovich's campaign, and listed prominent Republicans as references. *See* J.A. at 591, 597–99 (Petrigac Dep.). Finally, Richard Perk was the son of a former Republican mayor of Cleveland, Ohio, who had recommendations from the chairman of the Cuyahoga County Re-

publican party. *See* J.A. at 538–39, 543–45 (Perk Dep.).

Perk had a college degree and relevant experience in marketing, *see* J.A. at 530–36 (Perk Dep.), but there is no indication that Petrigac or Suhadolnik had any specific qualifications for the LEAR positions. Petrigac had only worked at a temporary service and kept accounts for a family business in addition to various political jobs. *See* J.A. at 589–93 (Petrigac Dep.). Suhadolnik had been an elementary school teacher for ten years. *See* J.A. at 639 (Suhadolnik Dep.). This is not to suggest that Petrigac and Suhadolnik were unqualified but merely to demonstrate that a reasonable fact finder might find that part of Brown's motivation for firing Kreuzer was to make room at the Commission for positions for Republican supporters.

A reasonable inference that Kreuzer was fired for political reasons is all the more possible, given the testimony of Kreuzer's coworkers. One stated that when Brown fired him, Brown claimed that he did not want to fire him, but "his hands were tied" and "there are commitments out there." Supp. J.A. at 28 (Vittardi Aff.). Another testified that Brown told him he was being fired not because of his performance but that the decision "was being made at a higher level and that [Brown] had no control over the decision." Supp. J.A. at 29 (Hughes Aff.). Yet another testified that he was told by Brown, some time before he was eventually fired, "[t]hey have not told me they want your job yet." Supp. J.A. at 25 (DeJohn Aff.). Brown also allegedly asked this co-worker, shortly after he had fired another employee, "[d]oesn't he know this is how the system works?" Supp. J.A. at 25 (DeJohn Aff.). Based on the standard for summary judgment, I conclude that Kreuzer has presented sufficient evidence to show that political reasons played such a substantial or motivating role in the decision to terminate her, that the requirements for a prima facie case were established.

### D. Brown's Response

Since the above-described evidence at least creates a material issue as to whether a substantial or motivating factor in Brown's decision to discharge Kreuzer was her political affiliation, the burden then shifts to Brown to demonstrate that he would have terminated Kreuzer regardless of her political affiliation. Brown claims that the reorganization, combined with the fact that he thought others would do better in the new positions, is why he terminated Kreuzer. *See* J.A. at 205, 223, 231 (Brown Dep.). Admittedly, it may be more difficult to prove that party affiliation was a motivating factor for discharge if the action takes place as part of a reorganization or reduction-in-force, but that does not end the inquiry into the employer's motives. *See McMahon v. Libbey–Owens–Ford Co.,* 870 F.2d 1073, 1077 (6th Cir.1989); *Hawley v. Dresser Indus., Inc.,* 958 F.2d 720, 723 (6th Cir.1992). Logic and case law suggest that an employer may not use the occasion of a legitimate reorganization to avoid constitutional limits on employment decisions. Even if the reorganization was a legitimate motive for discharging Kreuzer, a reasonable fact finder could still conclude that other illegitimate factors also motivated the decision. *See Mason,* 115 F.3d at 1452.[4] As the Tenth Circuit indicated in upholding a jury verdict finding an unconstitutional dismissal based on party affiliation, the plaintiff is "not required to prove that political patronage was the sole cause behind his discharge. Rather, once [a plaintiff] prove[s] political patronage was a motivating factor behind his dismissal, the burden of persuasion shift[s] to the defendants to prove, as an affirmative defense, that the discharge would have occurred regardless of any discriminatory political motivation." *Mason,* 115 F.3d at 1452 (citing *Gardetto v. Mason,* 100 F.3d 803, 811 (10th Cir.1996)); *see also Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

---

4. In an analogous age-discrimination case, *Hawley v. Dresser Indus., Inc.,* 958 F.2d 720, 723 (6th Cir.1992), this court held that "[w]here, as here, there is a reduction in force, a plaintiff must either show that age was a factor in eliminating his position, or, where some employees are shifted to other positions, that he was qualified for another position, he was not given a new position, and that the decision not to place him in a new position was motivated by plaintiff's age."

A reasonable jury could conclude from the evidence on the record that, prior to firing Kreuzer, Brown never requested Kreuzer's employment file, *see* J.A. at 225 (Brown Dep.), never contacted her supervisor regarding whether she could handle any of the new positions, *see* J.A. at 225 (Brown Dep.); J.A. at 304 (DeMio Dep.), and did not even speak at all to Kreuzer's direct supervisor regarding her job performance. *See* J.A. at 283, 286–87 (DeMio Dep.). When pressed during his deposition to explain why he found Kreuzer's qualifications lacking, Brown could only respond "I'm not sure I can put my finger on it. It's just my judgment." J.A. at 231 (Brown Dep.). When coupled with the evidence that at least two of the Republican replacements were objectively no more and perhaps less qualified than Kreuzer, a genuine issue of fact exists as to the credibility of Brown's proffered reasons for Kreuzer's dismissal. For purposes of summary judgment, Brown has not met his burden of demonstrating that he would have dismissed Kreuzer regardless of her political affiliation. Therefore I would reverse the district court's grant of summary judgment.

### III. THE MAJORITY'S SOLUTION

The majority never clearly states whether its decision is based on a determination that Kreuzer failed to establish a prima facie case or whether the majority, inappropriately, put the burden on Kreuzer to disprove that the reorganization was a pretext for her dismissal. Instead, the majority limits the ways a plaintiff in a reorganization case can prevail to three scenarios.[5] While each of these scenarios on its own may be sufficient to establish a claim of unconstitutional discharge, they do not exhaust the possible means of proving such a case. Additionally,

even under the majority's framework, the facts of this case create a genuine issue regarding a material fact such that summary judgment is inappropriate.

First the majority argues that Kreuzer's dismissal would be actionable if she could demonstrate that the "stated business or policy reasons for the reorganization are a subterfuge for its actual motivation, the desire to eliminate politically unfriendly employees." *Majority op.* at 363. Kreuzer could meet her burden by showing that the new positions are effectively identical to those eliminated. *See id.* As indicated in this dissent above, the mere fact that there is a legitimate reorganization does not end the inquiry. Kreuzer could still prevail if she demonstrates that she was not given the opportunity of transfer, promotion, or rehiring, because of her party affiliation. I believe she has met her burden at the summary judgment stage of presenting such evidence.

The second scenario that the majority approves is for Kreuzer to demonstrate that "similarly situated employees who were affiliated with the other political party were shifted to other positions, that she was qualified for one of those positions, and that the decision not to give her one of those positions was politically motivated."[6] *Majority op.* at 364. Two of the five former PIPs were retained and given new LEAR positions. This indicates that it was at least possible that those who were serving in PIP positions could be transferred to the new LEAR positions and perform them adequately. The majority claims, in what can only be viewed as an inappropriate weighing of the evidence, that the fact that these two former PIPs were Democrats makes it *"unlikely* that [Kreuzer] was not transferred because she is

---

**5.** The majority indicates "that under the circumstances present in this case, where a public employee *loses her job* because *her position is eliminated in a reorganization,* there are three scenarios under which the employee could make out a claim of unconstitutional patronage dismissal." *Majority op.* at 363 (emphasis added). Perhaps this is simply a mistake in wording by the majority, or perhaps this passage reflects the fatal flaw in the majority's analysis. It starts with the assumption that Kreuzer was fired *because of reorganization,* rather than

starting with the question, why was Kreuzer fired.

**6.** It is also worth noting, for the sake of clarification, that there is clear precedent in this circuit holding that a party affiliation claim may be made when the employee is being discriminated against based on his or her affiliation with a particular political faction. A plaintiff need not prove that someone from the "other political party" replaced him or her. *See McCloud v. Testa,* 97 F.3d 1536, 1547, 1553 (6th Cir.1996).

a Democrat." *Majority op.* at 364 (emphasis added). The majority attacks tiny pieces of the record in order to obscure the full picture of the puzzle. While it is true that the two transferred PIPs were Democrats, the three new hires were Republicans. Brown might only have needed to make room for three Republican supporters. For a similar example, if an employer is tired of having so many women in his plant, he may wish to get rid of some women and hire more men. In order to survive summary judgment, a dismissed female employee clearly would not have to demonstrate that the employer fired every woman. She only would have to present a prima facie case that demonstrates that the adverse personnel action taken against her was based on gender. Likewise, as Kreuzer contends, she was fired and not placed in one of the new positions because of her party affiliation. Although evidence that Republicans were transferred and she was not would help her case, she need not prove that every Democrat was fired. The fact that three new positions were filled by Republicans supports an inference that Brown failed to transfer, promote, or rehire her because of her political affiliation.

Finally, the majority asserts that Kreuzer could state a claim if she had "at some point before or during the reorganization ... applied for a different position, and she was not considered because of her political affiliation." *Majority op.* at 364. The majority then goes on to state that "there is no evidence in the record that plaintiff ever applied for a position at the reorganized Commission before bringing this action." *Majority op.* at 364. The majority fails to give sufficient weight to two distinct responses to this argument. First, a reasonable inference based on the evidence is that, regardless of filing any formal application, Kreuzer was actually considered for the position and rejected based on her party affiliation. In his motion for summary judgment to the district court and in his deposition, Brown indicates that he terminated Kreuzer in part because he "did not believe that Plaintiff was well suited for another LEAR position as a Chain Accounts Representative or as a Regional Coordinator." J.A. at 56 (Mot. for Summ. J.); J.A. at

205, 231 (Brown Dep.). Although Brown's reasons, if true, could justify Kreuzer's dismissal, they also indicate that she was indeed considered for one of the other positions, either through transfer, promotion, or rehire. The majority acknowledges that Brown himself contended that Kreuzer "*was not hired* for one of the other positions because he believed others were better qualified for those positions," *Majority op.* at 362 (emphasis added), yet still maintains that "there is no evidence in the record that plaintiff ever applied for a position at the reorganized Commission before bringing this action." *Majority op.* at 364. The majority surely cannot be suggesting that in this case a formal application would make a difference in its decision. When the evidence is viewed in the light most favorable to Kreuzer, she was considered for either a transfer, promotion, or rehire, and she was rejected. The only issue then is whether the decision was motivated in part by her party affiliation.

Alternatively, Kreuzer submits evidence that could support a claim that it was futile for her to reapply for a position. In other contexts the Supreme Court has found that a plaintiff need not make the futile gesture of applying for a job when the employer has made it clear that it intends to refuse such an application for bad reasons. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 365–66, 97 S.Ct. 1843, 1869–70, 52 L.Ed.2d 396 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). The majority dismisses this argument in a footnote, citing *Harless v. Duck,* 619 F.2d 611 (6th Cir.1980), for the proposition that to establish futility a "plaintiff must present 'overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices,' and plaintiff must also show that 'any application would have been futile and perhaps foolhardy.'" *Majority op.* at 364 n.2 (citing *Harless,* 619 F.2d at 617–18). *Harless* does not require a showing of "overwhelming evidence of pervasive discrimination." *Harless* merely held that in that case there was no

need for the plaintiff class to demonstrate that any specific women "had ever sought and been denied assignment to" the particular division in question because there was evidence of overwhelming discrimination and that any such application would have been futile. *Harless*, 619 F.2d at 617–18. For the purposes of defeating a motion for summary judgment, Kreuzer has presented evidence that would support a legitimate claim of futility. Under the circumstances of this case, a reasonable person could make the inference that it was futile for Kreuzer to reapply.

In its attempt to delineate the distinct methods available for plaintiffs to state a prima facie case in a reorganization context, the majority obscures the evidence in this case. While each of the three scenarios may aid a plaintiff in showing a prima facie case, they do not encompass all of the possible ways in which a plaintiff may support a claim. If the majority is content to claim that Kreuzer has failed to state a prima facie case under any of the majority's three methods, then one need look no further than the record in this case to see how inadequate this solution is. The evidence on the record, discussed briefly in Part II, when taken as a whole and viewed in the light most favorable to Kreuzer, raises a material issue of fact as to whether Brown's decision to terminate her was motivated by her political affiliation.

### IV. OTHER ISSUES

Brown also claims that he is entitled to qualified immunity. Since neither the district judge nor the majority has decided this issue, I too, refrain from commenting on it. I believe we should remand to the district court to decide the issue of qualified immunity.

Finally, Brown claims that he is entitled to summary judgment on the grounds that political affiliation is an appropriate requirement for effective performance of the jobs in question. The only exception to the *Elrod–Branti–Rutan* rule, prohibiting adverse personnel decisions by government employers against individuals based on party affiliation, is when "party affiliation" constitutes "an acceptable requirement for ... government employment." *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294. The Supreme Court has recognized that certain positions require a high degree of confidentiality or policymaking roles, such that an employer may be justified in dismissing an employee based on party affiliation. *See id.* at 518, 100 S.Ct. at 1294–95. The burden is on the employer, however, to "demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* As the majority has chosen not to reach this issue, I will simply note my opinion that there exists a genuine issue of material fact as to whether the duties of the relevant Commission jobs were such as to make political loyalty an "appropriate" job requirement. Brown "has not carried [his] burden of demonstrating that political loyalty is 'essential to the discharge of [the Commission's] governmental responsibilities.'" *Christian v. Belcher*, 888 F.2d 410, 416 (6th Cir.1989) (quoting *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294–95). The appropriate response is to reverse the grant of summary judgment for Brown on the First Amendment claim and to remand for further proceedings. *See id.*

### V. CONCLUSION

Viewing the entire record in the light most favorable to the plaintiff, I conclude that the evidence supports plaintiff's claim that her discharge was motivated by her political activity and that the defendant has not demonstrated that she would have been fired regardless of her political affiliation. The defendant is, therefore, not entitled to summary judgment on this key issue. I would remand this case to the district court for further proceedings consistent with this opinion.