**Harold TAYLOR, Plaintiff–Appellant,**

v.

**BELL COUNTY BOARD OF EDUCATION, et al., De-fendants–Appellees.**

No. 00–5350.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2001.

Before KEITH, NORRIS, and BATCHELDER, Circuit Judges.

PER CURIAM.

Defendant-appellant Harold Taylor appeals the dismissal of his action alleging employment discrimination in violation of 42 U.S.C. § 1983. For the foregoing reasons, we REVERSE the judgment of the district court.

### I. BACKGROUND

Harold Taylor was employed as a custodian by Arjay Elementary School in the Bell County School District. He was also an active member of his union, the Kentucky Educational Support Personnel Association (KESPA). During the period relevant to this appeal, Yvonne Gilliam was the Superintendent of Schools for Bell County.

During the fall elections of 1996, George Clyde Robbins, Leigh Wilson and Barbara Rutherford sought to be elected to the Bell County School Board. These candidates ran as a slate, promising that if elected

they would fire Gilliam. Harold Taylor actively campaigned for Barbara Rutherford while Gilliam supported incumbent Eugene Collett for a school board seat. Ultimately, Rutherford lost while the other two candidates—Robbins and Wilson—were elected to the school board. Collett retained his seat which assured that Gilliam would maintain her position as the Superintendent of Schools.

During the campaign, Taylor's friends warned him that he could be placing his job in jeopardy by supporting Rutherford. Taylor also received an anonymous note taunting him over the outcome of the election. Specifically, the note contained a picture of Collett with instructions on obtaining larger copies of the photograph. The note further directed Taylor to send his requests to "Eat Crow" in "Looserville, Kentucky." (J.A. at 32.)

In the spring of 1997, the school board implemented a reduction-in-force policy due to declining enrollment. Under this policy, Gilliam had the sole authority to decide who would be retained among the classified employees. Taylor and numerous other classified employees received letters of non-renewal and an offer to reapply for their positions. Taylor completed the re-application process and, despite his principal's favorable recommendation, was not offered his previous position. Instead, Bobby Brummitt, a Collett supporter whom Gilliam had known for "a long time," was reassigned to Taylor's position. (J.A. at 171.) Brummitt, later testified that he did not receive a letter regarding the reduction-in-force but, rather, a letter of reassignment to the new position.

Taylor then brought this action, alleging that Gilliam and Collet orchestrated his firing in retaliation for his support of an "anti-Gilliam" candidate and because he

had been active in his union. (Appellant's Br. at 31.) Upon reviewing the parties' respective motions for summary judgment, the district court found that Taylor had "failed to establish that political considerations motivated the adverse employment action and to refute the defendant's legally permissible explanation for the staffing decisions." (J.A. at 47.) With regard to Taylor's participation in his union, the district court found that Taylor had failed to demonstrate "that his union activity played any role in his non-renewal."[1] (J.A. at 49.) Taylor now appeals the district court's determinations regarding the defendants' political motives to this Court.

## II. DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment under Fed.R.Civ.P. 56. *See City of Mt. Clemens v. United States Envtl. Protection Agency,* 917 F.2d 908, 914 (6th Cir.1990). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In reviewing a summary judgment motion, this Court must construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *See Smith v. Hudson,* 600 F.2d 60, 66 (6th Cir.1979). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

**1.** As no argument regarding Taylor's union participation claim has been presented in his brief to this Court, we deem that claim abandoned.

B. Retaliation for Taylor's Political Affiliation

Taylor alleges that he was fired in retaliation for his political support of Barbara Rutherford. The First Amendment of the United States Constitution prohibits the discharge of a public employee for his political beliefs or affiliations. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). As an initial matter, Taylor "must show that the adverse employment action in question was the result of h[is] political affiliation." *Kreuzer v. Brown,* 128 F.3d 359, 363 (6th Cir.1997) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). This showing requires Taylor to demonstrate that his political affiliation "was a 'substantial' or 'motivating' factor behind the adverse employment action." *Kreuzer,* 128 F.3d at 363 (citing *Mt. Healthy City School Dist. Bd. of Educ.,* 429 U.S. at 287, 97 S.Ct. 568).

Taylor has sufficiently demonstrated that he suffered an adverse employment action and that his political affiliation differed from that of Gilliam and Collett. The district court further found that Gilliam and Collet were aware of Taylor's political activities. (J.A. at 47.) However, the district court held that Taylor failed to establish that the adverse employment decision was motivated by his political affiliations. We disagree.

In *Conklin v. Lovely,* 834 F.2d 543, 546–547 (6th Cir.1987), we held that "[t]he question of what actually motivated plaintiff's discharge may, of course, be determined by circumstantial evidence." In demonstrating the defendants' illegal motives, Taylor proffered the anonymous note he received after the election, the warnings of his friends and his unblemished work record. He also belatedly submitted the testimony of Sandra Brock, a friend and confidante of Gilliam.[2] Brock testified that Gilliam "strongly suggested" that she campaign for Collett because Gilliam would be able to "take care of [Brock]" if Collett was re-elected. (J.A. at 138.) Brock further indicated that Gilliam knew "who supported who in these Board races" and remembered her enemies. (J.A. at 152–153.) It is also noteworthy that Brock is the sister-in-law of Taylor's replacement, Bobby Brummitt.

With regards to Taylor's employment record, his evaluations were exemplary. Taylor received perfect scores in each category evaluated in the four years he was employed by the school district. David Messer was the principal of Arjay Elementary School and, as Taylor's supervisor, was responsible for evaluating his performance. Messer testified that Taylor "was the best custodian that [he] had had in approximately 21 years of some type of supervisory" service. (J.A. at 183–184.)

Our independent review of the evidence presented to the court below leads us to conclude that Taylor has established a prima facie case of retaliation. Accordingly, our inquiry now turns to whether defendants' can proffer a politically-neutral reason for Taylor's termination. *See Wexler v. White's Fine Furniture,* 246 F.3d 856, 869 (6th Cir.2001) (finding that defendant must present a "legitimate nondiscrimina-

---

2. Taylor also submitted an affidavit which documented a statement made by Collett in which he promised to "get rid of" Taylor. The affidavit was presented to the district court after defendants' motion for summary judgment was granted. The district court did not reference the affidavit in rendering its decision on the motion for reconsideration. Thus, absent evidence to the contrary, we must presume that the district court disallowed the belated affidavit. Moreover, as no reason for its delayed submission was presented to the court below as required by Fed. R.Civ.P. 60(b)(2), we will not consider the affidavit in deciding the issues in the instant appeal.

tory reason" for its adverse employment decision). Gilliam testified that a reduction-in-force was authorized by the school board and, as a result, numerous classified positions were eliminated. Employees, like Taylor, whose contracts were not renewed were requested to re-apply for their current positions and each candidate was to be evaluated based on merit. However, Taylor has presented sufficient evidence to rebut Gilliam's nondiscriminatory reason for his discharge.

The process that Gilliam was required to follow in deciding which employees would be discharged is articulated in Board Policy 03.271, adopted November 21, 1995. (J.A. at 30.) This policy reads as follows:

In the event it is necessary to reduce the number of classified employees, the Superintendent shall make a thorough analysis of the situation, consulting with such staff members who may be concerned. In arriving at individual terminations, priority consideration shall be given as follows:

1. The classified employee who has specialty license/training for the job area being reduced will be retained.
2. The classified employee who has the highest evaluation ratings retained.
3. The classified employee who has the highest number of years of service in the district will be retained.

*Id.*

When asked to explain her process in determining which classified employees would be discharged, Gilliam testified that she scheduled interviews with each of the principals of the affected schools and, otherwise, followed the Board Policy for reducing the work force. Messer, the principal of Arjay, testified that he strongly advocated for the retention of Taylor. Moreover, as previously discussed, Taylor's employment record was unblemished. Assuming, arguendo, that both Taylor and Brummit received good recommendations from their respective principals and possessed identical employment records, the deciding factor would be the length of service in the district. As Taylor's length of service exceeded Brummit's, Taylor should have been retained. Gilliam testified that Brummit's "attitude" led to his reassignment to Taylor position. (J.A. at 171.) However, Gilliam admitted that Messer's recommendation indicated that Taylor possessed a similar attitude. Tellingly, Messer testified that at the time he spoke with Gilliam in reference to Taylor's retention, Gilliam had already decided to discharge Taylor. (J.A. at 183.) Gilliam also testified that all classified employees received a reduction-in-force letter and the accompanying notification of the re-application process. However, Brummit testified that he never received a letter informing him of the reduction-in-force nor was he required to re-apply for his position. Instead, Brummit received a letter notifying him that he had been reassigned to Arjay Elementary School.

Reviewing the evidence in a light most favorable to Taylor, it appears to this Court that he has presented evidence which rebuts defendants' nondiscriminatory reason for his discharge. Accordingly, as there are genuine issues of material fact that are determinable by a jury, the district court erred in granting summary judgment in defendants' favor.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the Honorable Jennifer Coffman of the United States District Court for the Eastern District of Kentucky and REMAND the action for further proceedings consistent with this opinion.